Baldwin *v.* Vreeland.

## BENJAMIN E. BALDWIN

*v.*

## WILLIAM H. VREELAND et al.

A testator gave a house and lot to his wife for life, and directed his executors to sell the same upon her death and divide the proceeds among his three sons. In 1871 the widow and remaindermen entered into a written agreement to sell and convey the house and lot, but nothing further was done, and she occupied the premises until her death, in 1886. In 1872 one of the sons, James, gave a mortgage on his interest to one Bulkley, which was defective in form, but nevertheless recorded, and James's interest in the premises was afterwards sold by his assignee in bankruptcy to Bulkley. *Held,* that the execution of the agreement did not deprive the executors of their testamentary power of sale, and that any portion of the proceeds belonging to James's heirs-at-law should be paid to Bulkley's executors, he having died meanwhile.

On bill, answer and proofs.

*Messrs. Blake & Freeman,* for complainant.

*Mr. H. G. Copeland,* for Bulkley heirs.

*Mr. Robert McCarter,* for Nellie E. and Harry M. Vreeland.

*Mr. George B. Kingsley,* for William H. Vreeland.

BIRD, V. C.

The complainant is the executor of the last will and testament of William Vreeland, deceased, and he desires the court to instruct him as to the extent of his power arising under said will, and, particularly so far as it emanates from the clause in these words :

"I hereby direct, authorize and empower my executors hereinbefore named, or the survivors of them, to sell or convey all, or any part, of my real and personal estate not hereinbefore devised to my said wife, Mary W. Vreeland ; and the proceeds of all my estate, as aforesaid, either real, mixed or personal, I do hereby order and ask to be equally divided between my wife, Mary W. Vree-

Baldwin *v* Vreeland.

land, and my three sons, namely, Owen S. Vreeland, William H. Vreeland and James M. Vreeland, share and share alike; and the respective shares belonging to my said wife, Mary W., William H. Vreeland and James M. Vreeland, to be paid to them as soon as conveniently can be after the sale of my estate."

And, in connection therewith, the codicil made to said will, in and by which the testator directed, in addition to the bequests given in said will to his wife, to be given to her—

"For and during her natural life, a house and lot, formerly occupied by him, situate on Centre street &c., she to have the use and occupation and to receive the rents and profits for and during her life,"

and directing the sale thereof by his executors upon the death of the wife, and the proceeds to be equally divided among his three sons above named.

It appears from the pleadings and the proofs that, before the death of the widow, the devisees and the widow agreed to make sale and to convey the title to these lands. It does not appear that any one had as yet agreed to purchase. It also appears that this effort was ineffectual—or, at least, there was no effort beyond the declared intention of the widow and devisees to pass the title except so far as the interest of James M. Vreeland is concerned. but it is in evidence that, after this attempted sale, James M. Vreeland became insolvent, and was adjudged a bankrupt, and that all his right, title and interest in all his real estate whatsoever was sold by the assignee, under and by virtue of the bankruptcy laws of the United States, and that a deed was made by such assignee intending to convey the property mentioned in this bill to the extent of his interest. This sale in bankruptcy was made, in said proceedings, according to the law and by virtue of a mortgage given by said Vreeland to Erastus Bulkley, who was a creditor, and proved his claim against the estate of the said bankrupt for the sum of $3,000. The value of the mortgaged premises was ascertained, and the interest of the bankrupt thereunder fixed at $972, which amount was taken from the claim of the said Bulkley, and the said premises conveyed to him by the assignee in bankruptcy. *In re Grant, 5 Law Rep.*

*503.* After these proceedings in bankruptcy, the bankrupt died, leaving two children, Nellie E. and Harvey M., and a widow, all of whom claim an interest in the said land. Since then the said Bulkley has died, having made a will, which has been admitted to probate, disposing of all his real and personal estate, giving the same to his children and to others.

It is claimed that by virtue of the said agreement between said devisees and heirs-at-law, and the said James M. Vreeland, to unite in making sale of the said house and lot, given to their mother during her lifetime, that they deprive the executors of the said will of all power of sale or disposition thereof, and they thereby have elected to take, and did take, the said house and lot to themselves. But the executor, believing that he had a duty to perform as such executor in the disposition and sale of said house and lot, because of the directions in said will and codicil, took charge of the same, and undertook to make sale thereof, when the said devisees, or some of them, gave out and pretended that the executor no longer had any right or power of sale; and the question is whether, under the circumstances, in the execution of the trust confided to him, it is his duty to proceed to make sale and disposition of the said lands. That the said devisees, including their mother, the life tenant, could elect to take the said lands, instead of the proceeds thereof, no longer admits of a doubt, since it has been repeatedly so held in this court, whether they proceeded to make sale thereof or not. And I think it is equally clear that either of the said devisees could sell or encumber his interest, by mortgage or otherwise, at any time before the death of his mother, the tenant for life, without her consent, or without the consent of the executor. That James M. Vreeland attempted to convey his interest, by way of mortgage, on the 30th day of January, 1872, does not admit of a doubt. It has been insisted that this mortgage was not properly acknowledged so as to be admitted of record in this state, the execution thereof having taken place in the state of New York; nevertheless, it was admitted that the mortgage was made and executed, and, as no questions of priority arise, I am not to determine whether or not the mortgage could be recorded according to law or not, but

Baldwin v. Vreeland.

whether or not James M. Vreeland conveyed his interest to Erastus Bulkley or not, so far as appears by an inspection of the paper, it has all the elements of a complete and perfect conveyance, as between the parties thereto. The interest which Bulkley took, as between him and the mortgagor, was a complete title, and cannot be impeached by Vreeland, or those who are privy with him in estate, no one claiming a conveyance for a valuable consideration and *bona fide,* in hostility to the claim of Bulkley. This being so, and the assignee in bankruptcy making sale of the property described in the mortgage for a valuable consideration, and conveying the equity of redemption, an effectual and complete conveyance of the title is accomplished.

That the title to the fee in remainder was vested in James M. Vreeland is shown by *Gest* v. *Flock, 1 Gr. Ch. 108; Fluke* v. *Fluke, 1 C. E. Gr. 478; Snowhill* v. *Snowhill, 3 Zab. 447; Probasco* v. *Creveling, 1 Dutch. 449–452.*

And these same cases make it equally clear that he could dispose of his interest, and that the purchaser is entitled to all of his rights. At all events, the execution and delivery of the mortgage for a valuable consideration operated as an equitable assignment, which it is the duty of this court to recognize and maintain.

Having reached the conclusion that the interest of James M. Vreeland was vested, and that he could sell it, or mortgage it, and also that he did mortgage it, it still remains to be determined whether, by any act of the parties in interest, before James M. Vreeland made such mortgage, the power given to the executor, under the codicil, was destroyed. It is said that the agreement referred to was sufficient to effect that destruction, for thereby the devisees elected to take the land, which was ordered to be sold for their benefit, instead of the money to be realized from a sale by the executor. Was the execution of that agreement an election, in contemplation of law? It recites the right of the parties in the land, under the will and codicil, and says:

"Which the parties desire, and have consented to sell, and, for that purpose, they do agree to sell the said house and lot for the best price that can be obtained for the same, and upon said sale they agree to join and execute a deed therefor,"

29

and then arranges as to the disposition of the proceeds. Nothing else was done; no sale was made. The widow remained in possession, and enjoyed all her original rights under the will, from the date of this agreement, in the year 1871, until her death, in 1886. Those who claim the interest of James M. Vreeland, under his mortgage, insist that the execution of the said agreement was an election. The other parties in interest deny that the agreement is proof of any such result. Notwithstanding the fact that courts are desirous of allowing the legatee to take the land out of which his legacy arises, when that can be done consistently with the rights of others, and he has clearly expressed or manifested his intention so to do, yet, I think, that, when the act relied on as a manifestation of such intention, is susceptible of a different construction, and such act is, for a long period of time, entirely disregarded by the parties, to hold that there has been no election will be in accordance with the authorities. This agreement was made at a period when the executor could not exercise his power, *i. e.,* in the lifetime of the widow. She survived the execution of the agreement at least fifteen years; and, after the first few months, during the whole of that time, nothing was ever attempted to be done under it. I think that agreement can only be regarded as an expression of desire or willingness to sell, but nothing more; and that was afterwards entirely abandoned. But, supposing that the object had in view was an election to take the land, instead of the money, that was not effected; the agreement was executed, it is true, but there was no sale, which was, by its very terms, the purpose of it. And this brings me to what so distinctly appears—that is, that the purpose of the agreement was not to elect to take land in lieu of the legacy, but simply to anticipate, as far as possible, the action of the executor in converting the land into money, as designed by the testator; in other words, to accelerate events. When these considerations are given reasonable weight, it seems to me that it cannot be said that the parties had the slightest intention to take the land instead of the legacy. Some light is derived from the case of *English* v. *English, 2 Gr. Ch. 504,* in which it was held that, to constitute an election by a widow to accept a legacy in lieu of dower, there

must be something more than a mere intention to elect.    In that case the widow signed a petition to the legislature asking for the sale of certain real estate, in which she had an interest in dower, to raise money to pay legacies.    This was held not enough to cut off her dower.

I conclude that the executor has the power of sale, under the will, and that it is his duty to exercise that power, and to make distribution of the proceeds of such sale according to the directions of the will, the interest of James M. Vreeland to be paid to the executors of Bulkley.    The costs of this proceeding will first be paid out of the fund.